UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KRISTA PECOR, on behalf
of herself and a class of employees
or former employees similarly situated,

           Plaintiff,

    v.                                           Case No. 16-C-1263

NORTH POINT EDC INC.,
d/b/a North Point Exotic Dance Club,
DAVID NICHOLS, and BILLIE JO RANSOM,

           Defendants.

## DECISION AND ORDER DENYING
## MOTION FOR CONDITIONAL CERTIFICATION

Plaintiff Krista Pecor, a dancer at North Point EDC, Inc., d/b/a North Point Exotic Dance Club, located in Peshtigo, Wisconsin, brought this putative collective action on behalf of herself and other similarly situated employees against the Club, and David Nichols and Billie Jo Ransom, its its owners/managers, for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA). Pecor alleges that the defendants misclassified her and other exotic dancers at North Point as independent contractors and failed to pay them the statutory minimum wage and overtime wages. Pecor also asserted claims under the the Wisconsin wage law, Wis. Stat. § 109.01, *et seq.*, and for conversion and unjust enrichment.

The case is before the court on Pecor's motion for (1) conditional certification of a collective action pursuant to 29 U.S.C. § 216(b); (2) approval of a court-authorized notice to be sent to all dancers who worked for the Club during the three-year period prior to the filing of the complaint;

and (3) an order compelling the defendants to provide a list of persons who danced at the Club within the relevant time period. For the reasons that follow, Plaintiff's motion for conditional class certification and court-facilitated notice will be denied.

## BACKGROUND

Pecor is the sole named plaintiff in this lawsuit, but two other individuals consented to join as FLSA opt-ins shortly after the lawsuit was filed, albeit with their last names redacted. Together, the named and opt-in plaintiffs worked as exotic dancers at North Point during the applicable statutory period. According to Pecor, dancers at North Point are required to (1) perform stage dances in view of the patrons, (2) encourage patrons to purchase drinks, and (3) perform "lap dances" for individual patrons. (Pecor Decl. ¶ 4, ECF No. 20.) Each dancer keeps all of the tips she receives from the stage dances. (Nichols Decl. ¶ 7.) Customers were charged $20 for lap dances, of which the Club kept $10 and the dancer received the remaining $10, which defendants call a bonus, if she performed at least four lap dances during her shift. Otherwise she received nothing. Dancers were also required to encourage customers to order drinks and were paid a bonus of a dollar per drink sold if they sold more than ten per shift. Otherwise, they again received nothing for the drinks they sold. Each dancer also paid a $10.00 "stage-fee" at the start of her shift to cover miscellaneous expenses, including the cost of playing her music on the juke box. (*Id.* ¶ 6; Nichols Decl. ¶ 8, ECF No. 23-1.)

Pecor claims North Point controlled what articles of clothing dancers wore or removed, but cites as examples only that they were required to wear high heels and remove their tops. (*Id.* ¶ 15.) The Club sets the schedule for each dancer based upon the dancer's availability and the Club's needs for any given week. (*Id.* ¶ 9.) The schedule is set a week early and the Club keeps track of the

2

dancers who perform according to the schedule. (*Id.* ¶¶ 11–12.) The typical shifts were from 4:00 p.m. to 2:00 a.m. from Sunday through Wednesday, and 4:00 p.m to 2:30 a.m. from Thursday through Saturday. The bartender tracks the days the dancer worked, the time they arrived, the drinks sold, and the dances and lap dances performed and/or sold. (*Id.* ¶ 14.) Customers purchase lap dances from the bartender, who gives the customer a lap dance ticket to give directly to the dancer. (*Id.* ¶ 16.)

Pecor worked as a dancer at North Point from Spring 2011 through July 2016. (Pecor Decl. ¶ 2.) She alleges that North Point classifies all dancers as independent contractors. (*Id.* ¶ 16.) Pecor asserts that all dancers were paid out each Saturday and that their pay could be withheld or docked for the failure to meet the lap dance quota, failure to meet the drink quota, or by leaving their shift early or forgetting to sign out at the end of each shift. (*Id.* ¶¶ 11–12, 14.) She claims she has never been paid, or heard of anyone being paid, minimum wage or overtime for their work at North Point, although she has heard of dancers not being paid for a week's worth of work. (*Id.* ¶ 18.)

Nichols, the president of North Point and the corporate officer in charge, does not dispute Pecor's account of her experience, but states that each dancer has a different arrangement. Several of the more experienced dancers who draw a crowd receive a bonus just for appearing. Other dancers' agreements vary according to their experience, nature of their performance and daily bonus rates they individually negotiate. (Nichols Decl. ¶ 5.) Each dancer's compensation also varied based upon the amounts they would receive from customers for lap dances, drinks and tips. (*Id.* ¶ 6.)

Nichols also noted that about 10% to 15 % of the dancers who filled out IRS W-9 forms in anticipation of dancing at the Club either never dance at all or discontinue after one night. (*Id.* ¶ 24.) A majority of the dancers have a long-term working relationship with the Club but perform at other

3

clubs as well. The dancers typically work for two or four weeks and then "go on the road" for weeks or months so as to update their act, refresh their customer base or take advantage of larger crowds that show up seasonally at other locations. (*Id.* ¶ 25.)

**ANALYSIS**

The FLSA permits collective actions "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). At least for now, Defendants do not challenge Pecor's characterization of herself and members of the proposed class as "employees" within the meaning of the FLSA. *Contra Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995) ("[A] core issue in this case is whether the dancers are 'employees' . . . If not (that is, if the dancers are independent contractors), the [FLSA] does not apply[.]"). Instead, Defendants argue that the Court should deny conditional class certification because the purported class of plaintiff dancers is not similarly situated. The Court will thus address Pecor's motion on that basis.

Unlike a typical class action suit under Federal Rule of Civil Procedure 23, where an unwilling plaintiff must "opt out" of the class, the FLSA requires employees or former employees to "opt in" to the class by giving written consent to become a party to the collective action. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982) (explaining differences between collective action under the FLSA and class action certification pursuant to Rule 23). District courts may, in their discretion, implement this "opt in" procedure by facilitating notice to potential plaintiffs to a FLSA collective action. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods*, 686 F.2d at 580. "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative

4

plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). Generally, in order to determine whether the representative plaintiff is "similarly situated" to potential opt-in plaintiffs, this Court follows a two-step certification approach. *Adair v. Wisconsin Bell, Inc.*, No. 08-CV-280, 2008 WL 4224360, at *8 (E.D. Wis. Sept. 11, 2008).

First, the court examines whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. *Id.* at *3. At the first stage, the plaintiff must make "at least a modest factual showing that such collective action is appropriate." *Id.* at *4. The plaintiff may present factual support in the form of affidavits, declarations, deposition testimony, or other documents in order to demonstrate some "factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011). At step two, usually on the defendant's motion for decertification, the court must determine whether plaintiffs who have opted in are, in fact, similarly situated. *Brabazon v. Aurora Health Care, Inc.*, 10-CV-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011). At the second stage, the court will assess whether continuing as a collective action will provide efficient resolution in one proceeding of common issues of law and fact. *Hoffmann-La Roche*, 493 U.S. at 170.

Though the conditional certification at the first stage is a lenient standard, it is not a "mere formality." *Adair*, 2008 WL 4224360, at *3. Because a plaintiff's "discovery demands upon conditional certification may impose a 'tremendous financial burden to the employer,'" courts must be careful to guard against wasting the parties' time and resources where certification is not appropriate at the outset." *Id.* at *4 (quoting *Woods*, 686 F.2d at 581). For this reason, some courts

5

require a showing not only that similarly situated potential plaintiffs actually exist, but that a substantial number likely have an interest in joining the litigation. *See Collins v. Barney's Barn, Inc.*, No. 4:12CV00685, 2013 WL 1668984, * 2 (W.D. Ark. April 17, 2013) ("Additionally, this Court agrees with those courts that require evidence that other similarly-situated individuals desire to opt into the litigation."); *see also Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir. 1991); *Alvarez v. Sun Commodities, Inc.*, 2012 WL 2344577, *2 (S.D. Fla.2012); *Johnson v. VCG Holding Corp.*, 802 F.Supp.2d 227, 239 (D. Me. July 25, 2011); *McKnight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 805 (S.D. Tex.2010); *Salazar v. Agriprocessors, Inc.*, 2008 WL 782803 (N.D. Iowa 2008); *Saxton v. Title Max of Alabama, Inc.*, 431 F.Supp.2d 1185, 1187 (N.D. Ala.2006). As the court noted in *Collins*, "[w]ithout such a requirement, the parties and the Court could waste valuable resources issuing notice to potential plaintiffs only to find that the case cannot proceed as a collective action." 2013 WL 1668984, at *2.

Pecor contends that she has met the minimal burden to show that she and potential plaintiffs were victims of a common policy or plan at North Point. She asserts that Defendants have essentially conceded in their brief in opposition North Point's common scheme that applies to all its exotic dancers: (1) each dancer at North Point keeps their own tips for regular dance performances; (2) North Point requires that each dancer's costume/performance complies with local laws regarding nudity and imitating sexual acts; (3) each dancer must pay $10.00 at the start of their shift to fund the juke box; (4) a dancer's number of days performed is determined by their schedule and North Point's need for performances in a given week; (5) each dancer is encouraged to perform at least four lap dances and obtain a customer's purchase of approximately ten drinks per day—failure to do so may result in the loss of any bonus pay; (6) the performance manager establishes the schedule a

6

week early and assigns each dancer a number to keep track of performances, drinks, and dances sold; (7) the bartender tracks which dancers perform according to the schedule; (8) the bartender and dancer record the days the dancer works, the time arrived, the drinks sold, dances/lap dances performed and sold; (9) the customers pay the bartenders for any lap dances; and (10) North Point controls performances to the extent necessary to comply with State and local laws and sets forth rules for safety and order. (Pl.'s Reply in Supp. at 1–2, ECF No. 24.) In so arguing, however, Pecor has ignored entirely the defendants' showing that the dancers are not similarly situated.

In determining whether individuals are similarly situated, the court "need not accept the plaintiff's allegations as true." *Nehmelman*, 822 F. Supp. 2d at 751. Instead, the court evaluates the entire record before it, "including the defendant's oppositional affidavits, to determine whether the plaintiffs are similarly situated to other putative class members." *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008)). Defendants assert that despite the above listed circumstances, Pecor is not similarly situated to other putative class members. Each dancer at North Point signs a different agreement for fees for their performances, usually based on experience, nature of their performance, or individually negotiated daily bonus rates. (Nichols Decl. ¶ 5.) Some dancers receive an appearance bonus based on their popularity. (*Id.*) Defendants assert that because the majority of dancers at North Point did not work a minimum work week and there is not commonality of earnings between dancers, there can be no similarly situated claims.

Based on the record before me, I conclude that Pecor has failed to make an adequate showing that she is similarly situated with proposed class members so as to warrant conditional class certification. Although Pecor presents a set of circumstances that affected all dancers at North Point,

7

she entirely ignores evidence offered by the defense that significant variations also exist. Most importantly, Pecor offers no evidence as to how many hours a week most dancers work at the Club, the amount they generally receive in tips and bonus payment, or how many reach the threshold number for requiring overtime pay. She fails to provide such information even for herself and offers none as to the other dancers. And the two anonymous opt-ins have provided no information at all.

Defendants' evidence that 10% to 15% of those that sign up to dance never do, or show up one night and never return is undisputed. Of those dancers who do work at North Point on a more regular basis, Pecor failed to establish any degree of commonality or numerosity of the class. She provides the standard shift length, but does not offer any information about how many shifts she or any other dancer works at the Club in a typical week. Conversely, the defendants submitted the weekly dancer payout at North Point for September 19–24: of the fifteen dancers that worked that week, only two dancers worked more than 40 hours, one dancer that worked less than 40 hours earned more than the others based on performance and other factors, and eight dancers worked only two days or less. (Ex. 3, ECF No. 23-3.)

Likewise undisputed is the defendants' evidence that most dancers do not work at North Point exclusively and, in fact, move to different clubs on a semi-regular basis. It is also not entirely clear that there is a class of dancers at North Point whose weekly earnings were withheld due to a failure to meet a lap dance or drink quota. Pecor asserts in her Declaration that she has "heard" of other dancers not being paid for a week's worth of work, but she does not allege her weekly total was ever withheld. A plaintiff may not demonstrate she is similarly situated for the purposes of conditional class certification by relying on "unsupported assertions of additional plaintiffs and

8

widespread FLSA violations." *Littlefield v. Dealer Warranty Servs., L.L.C.*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010).

In short, Pecor has failed to demonstrate a reasonable basis that she is similarly situated to potential class members. Dancers at North Point individually negotiate their agreements with the club, work variable hours based upon their individual availability, receive differing levels of compensation based on factors unique to the dancer, and do not dance exclusively at any one dance club. These factors demonstrate all the dancers who work or have worked at North Point are not similarly situated. Accordingly, Pecor's motion for conditional class certification is denied.

## CONCLUSION

For the reasons stated herein, I conclude that Pecor has not made a sufficient factual showing that she and the putative class members are similarly situated. Thus, I do not reach the parties' additional arguments. Pecor's motion for conditional certification of a collective action and request for court-facilitated notice (ECF No. 19) is **DENIED**. The Clerk is directed to place this matter on the court's calendar for a telephone conference to address further scheduling.

**SO ORDERED** this   8th   day of June, 2017.

                                             s/ William C. Griesbach
                                             William C. Griesbach, Chief Judge
                                             United States District Court